

11609-039
Daniel R Davis
010001 United States Penitentiary
Post Office Box#019001
Atwater, CA 95301
United States

Atwater, CA 95301


## IN THE UNITED STATES DISTRICT COURT


UNITED STATES OF AMERICA,    )

          Plaintiff,    )  No. 88-20063-02

                   )

          vs.          )

                   )

DANIEL DAVIS,          )

          Defendant.    )

_____)


## MOTION FOR COMPASSIONATE RELEASE


DANIEL DAVIS, acting pro se, respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to grant him compassionate release and reduce his sentence of imprisonment to time served.

This applicable compassionate release statute allows the Court to reduce a previously-imposed sentence for "extraordinary and compelling" reasons. Changes to 21 U.S.C. §§ 841(b)(1)(A) and 851's sentencing regime pursuant to the First Step Act of 2018 mean that Mr. Davis has already served a term of imprisonment that is longer than what he would be

sentenced to under current law. Furthermore, public health experts recognize that the underlying coronavirus pandemic is especially dangerous within the confines of correctional institutions, and the Bureau of Prisons has failed to prevent the spread of COVID-19 in its facilities.

This Motion is based on the record and files in this case, and the attached Memorandum in Support.

DATED:  Atwater, California, *March 8*, 2021.

_____
Daniel Davis

MEMORANDUM IN SUPPORT OF MOTION FOR

COMPASSIONATE RELEASE OR REDUCTION IN SENTENCE

I.    Procedural and Factual Background

Mr. Davis was charged for violating the federal
narcotics laws. Prior to trial, the United States filed two
prior drug felony notices against him to enhance his sentence
from a statutory term of 10 to life, to a mandatory life
imprisonment term, relying on two prior felony drug
convictions.

Subsequently, the defendant proceeded to trial by jury
and was convicted. At sentencing the court imposed a mandatory
term of life imprisonment. Defendant pursued an appeal which
was affirmed by the *sixth* Circuit. Post conviction relief
was also subsequently denied.

II.  The First Step Act and its Landscape Changes to

Section 3582(c)(1)(A)(i) that Governs Compassionate

Release Motions.

In December 2018, President Trump signed the First Step
Act into law. P.L. 115-391. The Act was momentous "culmination
of a bi-partisan effort to improve criminal justice outcomes,
as well as to reduce the size of the federal prison population
while also creating mechanisms to maintain public safety."
Cong. Research Serv., R45558, The First Step Act of 2018: An
Overview 1 (2019). Compassionate release codified in its
amended form at 18 U.S.C. § 3582(c), provides means for

1

inmates with "extraordinary and compelling circumstances" to be release from prison early. Under § 3582(c)(1)(A), the Court has the power to consider Mr. Davis' compassionate release or reduction in sentence request.

As four circuits have now held, section 1B1.13 and its commentary do not apply at all to a defendant's § 3582(c)(1)(A)(i) compassionate release motion. See United States v. McCoy, 981 F.3d 271, 281-82 (CA4 2020); United States v. Gunn, 980 F.3d 1178, 1180-81 (CA7 2020); United States v. Jones, 980 F.3d 1098, 1110 (CA6 2020); United States v. Brooker, 976 F.3d 228 (CA2 2020); see also United States v. O'Bryan, 2020 WL 869475, at *3 (D. Kan. Feb. 21, 2020)(reducing defendant's sentence to time served based on the First Step Act's changes to the stacking provisions of § 924(c) offenses). Section 603 of the First Step Act changed the process by which § 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and then move for release, a court can now resentence "upon motion of defendant," if the defendant has fully exhausted all administrative remedies "or the lapse of 30-days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Recently in United States v. Brooker, No. 19-3218-CR, 2020 WL 5739712, at **5-7 (2d Cir. Sept. 25, 2020), the Second Circuit held that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and "[n]either Application

Note 1(D), nor anything else in the now-outdated version of the Guideline § 1B1.13, limits the district court's discretion." Id. at *7. The Second Circuit noted that "Congress clearly did not view this--a break with over 30 years of procedure--as a minor inconsequential change." Brooker, 2020 WL 5739712, at *6. The Court concluded that the language of "Guideline § 1B1.13 ... is clearly outdated and cannot be fully applicable. In other words, if a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 is not applicable to compassionate release motions brought by defendants, and Application Note 1(D) cannot constrain district courts discretion to consider whether any reasons are extraordinary and compelling." Id.

The effect of these new changes is to allow Federal Judges the ability to move on a prisoner's compassionate release application even in the face of BOP opposition or its failure to respond to a prisoner's compassionate release in a timely manner. Congress made these changes in an effort to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). Congress labeled these changes "increasing the use and transparency of compassionate release." See 164 Cong. Rec. H10346, H10358 (2018)(emphasis added).

Mr. Davis is not moving the court for compassionate release due to any medical reason, age, or family circumstance. Mr. Davis is directing the court to an "extraordinary and compelling" reason other than the above listed factors, as authorized by the First Step Act and Congress' intent. The First Step Act not only reduced

3

mandatory minimum penalties, but also clarified the classification of offenses and conditions under which they apply. Under the Act, a defendant's prior convictions must meet the new definitions of "serious drug felony" or "serious violent felony." In order to meet the new criteria, a defendant must have:

> (1) served a term of imprisonment of more that 12 months on the prior offense, and,

> (2) must have been released within 15 years of the current federal offense;

> (3) In addition, any "serious drug felony" based on 18 U.S.C. § 3559(c)(2), must have been punishable by a term of imprisonment of ten years or more.

In this case, the Government had moved to enhance Mr. Davis' sentence pursuant to 21 U.S.C. § 851, because his prior convictions were classified as "felony drug offenses" pursuant to 802 "sentencing classification of the offense," and thus, he received a statutory enhanced sentence that resulted in Life imprisonment. Since it was Congress' intent to have only "serious drug felonies" classified as qualifying for statutory enhanced penalties, defendant submits the court has the authority to exercise discretion under the First Step Act as to his current sentence of life imprisonment, which was statutorily enhanced in opposite of congressional intent, is

an extraordinary and compelling reason to grant compassionate release.

The most relevant facts here is the First Step Act of 2018, and Congress clarifying the definition of a "serious drug felony." Based on this clarification, the legal and factual basis for the enhanced sentence under 21 U.S.C. § 851 to which Mr. Davis was sentenced is no longer sufficient. The "felony drug offenses" that forms the basis of Mr. Davis' sentence enhancement does not qualify as serious drug offenses under Congress' classification in the First Step Act. The court recognizes as a factor in this combination the fundamental change to sentencing policy carried out in the First Step Act's elimination of life imprisonment as a mandatory sentence solely by reason of a defendant's prior conviction, 401(A)(2), 132 Stat. at 5220 (codified at 21 U.S.C. § 841(b)(1)(A)).

In light of these subsequent changes to Federal Sentencing, Mr. Davis like many others, now find himself in a state of sentencing purgatory; that is, he now has a sentence which Congress and the U.S. Sentencing Commission finds should not result in a life sentence. This creates a sentencing disparity among defendants with like criminal conduct facing sentencing today in the opposite of congressional intent.

The Senate Judiciary Committee believes that there may be cases in which an eventual reduction in the length of a term of imprisonment is justified by change of circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the

5

sentencing guidelines and the statutory penalty have been
later amended to provide a shorter term of imprisonment. In
United States v. Maumau, No. 08 Cr.-00758, 2020 WL 806121, at
*7 (D. Utah, Feb. 18, 2020), the court concluded that drastic
reduction in § 924(c) sentences with its elimination of
stacking did provide an extraordinary and compelling reason
which, in combination with other circumstances in the case--
warranted a modification of defendant's sentences.

Similarly in United States v. Urkevich, No. 03-CR-27,
2019 WL 6037391 (D. Neb. Nov. 14, 2019), the court granted a
defendant's motion on similar grounds, noting "specifically
the injustice of facing a term of incarceration forty years
longer than Congress now deems warranted for the crimes
committed." See also, United States v. Brown, 411 F. Supp. 3d.
446, 453 (S.D. Iowa, 2019). "District courts assessing a
compassionate release motion may still consider the resulting
sentencing disparity caused by the First Step Act in § 924(c)
cases."

A particular case of interest is United States v. Price,
No. 07-0152-06 (ESH), 2020 U.S. Dist. LEXIS 184784 (D.C. Oct.
6, 2020). In 2008 after a jury trial, Mr. Price was convicted
for conspiracy to possess with intent to distribute one
kilogram or more of phencyclidine ("PCP"), in violation of 21
U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(vi), 851. At the time
he was sentenced, due to two prior drug convictions, he was
sentenced to the statutory mandatory minimum of life
imprisonment and 10 years supervised release. The district
court found that "[d]ue to relevant amendments in the relevant
statutes, Mr. Price's statutory mandatory minimum if he were

being sentenced today would be 15 years. If he were serving a
15-year sentence, the Bureau of Prison calculates that, with
good time credits, Mr. Price would have been released in march
2020." The district court addressed the exhaustion
requirements, the section 3553(a) factors, and concluded that
the First Step Act "freed district courts to consider the full
slate of extraordinary and compelling reasons that an
imprisoned person might bring before them in motions for
compassionate release," citing United States v. Brooker, No.
19-3218-CR, 2020 U.S. App. LEXIS 30606, 2020 WL 5739712, at *5
(2d Cir. Sept. 25, 2020).

The court further found that Mr. Price's statutory
mandatory life sentence under 21 U.S.C. § 851 constitutes an
extraordinary and compelling reason that warrants
compassionate release. It is noteworthy to mention here that
the Second Circuit in Brooker held that "[n]either Application
Note 1(D), nor anything else in the now-outdated version of
the Guideline § 1B1.13, limits the district court's
discretion." Id. at *7. Mr. Davis submits that the decision in
Price is persuasive authority which this court can consider
for the instant motion pursuant to 18 U.S.C. § 3582(c)(1)(A).

Consistent with numerous other courts to have confronted
similar situations since the First Step Act, this decision to
grant Mr. Davis compassionate release, turns on the enormous
sentencing disparity created by subsequent changes to federal
sentencing law which constitutes an "extraordinary and
compelling reason" for compassionate release. In assessing
whether Mr. Davis has presented extraordinary and compelling
reasons, the court should initially and centrally consider the

7

sentence he receives relative to the sentence he would now receive for the same offense; whether and to what extent there is a disparity between the two sentences, and why that disparity exists. In that regard, the sentence Mr. Davis received was in large part attributable to then available prosecutorial practice of using simple drug felonies in place of "serious drug felonies" when charging 21 U.S.C. § 851.

In fact, the FSA's Amendments to the compassionate release process were explicitly aimed at empowering courts to do just that--namely, to conduct an individualized assessment of a defendant's case and approve a sentence reduction when warranted. The Act's broader purpose is likewise consistent with allowing courts to consider such gross sentencing disparities, rather than forcing judges not to address subsequent changes to sentencing policy. That disparity is primarily the result of Congress' conclusion that sentences like Mr. Davis' are unfair and unnecessary, in effect, a legislative rejection of the need to impose sentences under 21 U.S.C. § 851, as originally created. In addition, it is a legislative declaration of what level of punishment is adequate. These, the court should find as extraordinary and compelling developments that constitute "extraordinary and compelling reasons" that warrant a reduction to Mr. Davis' sentence of incarceration.

A. Remedy Available Under the First Step Act.

This Honorable Court may exercise its discretion under the First Step Act of 2018, as Mr. Davis has illuminated an

extraordinary and compelling reason that warrants relief. This
court should first order a new PSR, then resentence Mr. Davis,
and issue a downward variance because the statutory mandatory
enhancement that caused the sentence of life imprisonment is
unnecessary to meet the objective of sentencing. Mr. Davis
respectfully submits that a guidelines sentence is sufficient
but not greater than necessary to reflect the seriousness of
the offense, to promote respect for the law, provide just
punishment, afford adequate deterrence to criminal conduct,
and to protect the public from further crimes by Mr. Davis.
See 18 U.S.C. § 3553(a)(2).

In terms of the kinds of sentences available and the
guidelines range, Mr. Davis has now served over *three* decades in
prison, exceeding the 10-year statutory mandatory minimum.
Wherefore, as other courts have varied downward from
guidelines sentences or reduced sentences to time ser
the First Step Act context, a sentence of time-serv           ⌐
avoid unwarranted disparities between other defendants. Id. §
3553(a)(3)-(6); see United States v. Biggs, Case No. 05-CR-
316, 2019 U.S. Dist. LEXIS 81509, 2019 WL 2120226, at *3-4
(N.D. Ill. May 15, 2019); United States v. Jesus Antonio
Mondasca Sr., 2020 U.S. Dist. LEXIS 37488, No. 89-CR-0655 DMS
(D. Cal. March 3, 2020); United States v. Quinn, 91 Cr.-0060
DLJ (RS), 2020 WL 3275736 (N.D. Cal. June 17, 2020).

Given the reasoning of federal district courts around the
country exercising discretion in the First Step Act context, Mr.
Davis has submitted an extraordinary and compelling reason

for the court to exercise its discretion in the First Step Act context. If the defendant were charged today, he would not receive an 851 enhancement because he would no longer qualify. Considering the 18 U.S.C. § 3553(a) factors, which includes defendant's post-conviction rehabilitation conduct, a downward variance is warranted. See 18 U.S.C. § 3553(a); Pepper v. United States, 562 U.S. 476, 481 (2011); Simons, 375 F. Supp. 3d. at 388-89 (reducing sentence to time served considering § 3553(a) factors and post-sentence conduct under Pepper); Mitchell, 2019 U.S. Dist. LEXIS 107396, 2019 WL 2647571, at *7-8 (citing cases and reaching same conclusion).

    **B. Mr. Davis has Satisfied the Administrative Requirements.**

    Mr. Davis filed a request for a reduction of sentence under the compassionate release statute with the warden of U.S.P. Atwater, California on ___/___/202? which was denied. See Attachment A. Mr. Davis pursued the relevant administrative remedies and has completed such.

**III. The Relevant Section 3553(a) Factors Favors Compassionate Release.**

    Once extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors under § 3553(a) to determine whether a sentence reduction is warranted. See 18 U.S.C. § 3582(c)(1)(A). In making this determination, the Court must consider "the most

up-to-date picture" of Mr. Davis' history and characteristics, which "sheds light on the likelihood that Mr. Davis will engage in further criminal conduct." Pepper v. United States, 562 U.S. 476, 491 (2011).

The Supreme Court held in Pepper that evidence of post-sentencing rehabilitation is relevant to the history and characteristics of the defendant. Pepper, supra, at 491 (citing § 3553(a)(1)). Other courts have considered similar accomplishments by an inmate sufficient to establish that inmate's rehabilitation, favoring a sentencing reduction. See Decator, 2020 U.S. Dist. LEXIS 60109, 2020 WL 1676219, at *4 (finding that section 3553(a)(1) factor favored compassionate release because, inter alia, "[w]hile incarcerated Decator has participated in extensive education and rehabilitation programming... and has minimal non-violent disciplinary record."); Redd, 2020 U.S. Dist. LEXIS 45977, 2020 WL 1248493, at *10 (finding that inmate's evidence of rehabilitation favored sentence reduction because inmate "has demonstrated a commitment to self-improvement, devoting hundreds of hours to vocational programs and assisting others in their rehabilitative efforts."). Section 3553(a)(2) considers whether a given sentence complies with "the four purposes of sentence: just punishment, deterrence, protection of the public, and rehabilitation." Dean v. United States, 137 S. Ct. 1170, 1175 (2017).

Since Mr. Davis sentence was imposed, he has made effort in become a better version of himself. He took the steps necessary to rehabilitate himself and to prepare for reentry even when there was no hope of release. Mr. Davis has

completed numerous Adult Continuation Education Programs throughout his incarceration. He has engaged in fruitful employment, and conducted himself in a well respectable manner among inmates and staff alike. See Attachment B (Programs Completed). If granted compassionate release, Mr. Davis has a strong supportive family that will provide residence, and financial support, including employment.

IV.  COVID-19 Outbreak at USP Atwater Presents Extraordinary and Compelling Reason for Relief.

Public health experts have warned that incarcerated individuals "are at special risk if infected" and are "less able to participate in proactive measures to keep themselves safe." Indeed, the conditions in BOP facilities provide a uniquely hospitable environment for COVID-19 to spread. The BOP's ability, or lack thereof, to contain the spread of this highly transmissive disease is further detailed by the increase of total BOP cases from just two on March 20, 2020, to nearly 43,000 inmates as of today. One Hundred and Eighty (180) inmates have died as a result of contracting COVID-19. Further, an additional 4,663 BOP staff members have also contracted COVID-19. Three staff members have perished as a result.

USP Atwater, where Mr. Davis is housed, is not immune. As of today, the BOP reports 122 active COVID-19 cases among inmates and eight staff cases at USP Atwater. The BOP further reports that 107 USP Atwater inmates and 18 staff members have "recovered" from the disease. See www.bop.gov/coronavirus

(Jan. 5, 2021). The facility houses 669 inmates with completed tests, with 237 of those tests being positive, a positivity rate of more than 35%. The number of active cases at USP Atwater is likely higher than currently reported, moreover, because the facility also houses an additional 206 inmates with pending COVID-19 test results.

      1. Mr. Davis' Age Place Him at High Risk of
          Severe Infection.

Mr. Davis is 50 years old. According to the CDC, individuals at 50 years old and older are at high risk of infection and even death. Furthermore, his risk of death is 30x higher. The CDC recognizes that "the risk for severe illness from COVID-19 increases with age, with older adults at the highest risks." CDC, Older Adults, Dec. 13, 2020, at https://bit.ly/2UNVvfN. People who are between 50 and 64 years old COVID-19 hospitalization rate is four times higher than the rate for 18 to 29 year olds. The death rate for people in that age group is 30 times higher than the death rate for 18 to 29 year old. CDC, covid-19 Hospitalization and Death by Age, Aug., 18, 2020, at https://bit.ly/30kIU5V.

The CDC also warns that "[a]dults of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19." CDC, COVID-19 Hospitalization and Death by Age, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.htlm (last accessed: October 5, 2020). Despite the BOP efforts to control the spread of COVID-19, the BOP records for

13

USP Atwater strongly demonstrates that Mr. Davis cannot comply with the CDC's recommendation for social distancing.

There is even a greater concern with four new variants that are identified in the United States. Scientific reports confirmed that the South Africa variant, B.1.351 is identified in the United States and that the strain causes more-severe illness, is 50%-70% more transmissible than earlier version of the virus, and potentially deadlier than the more common strains. Other scientific data revealed that the U.K. strain, B.1.1.7, with the D6146 mutation is a potentially supercharged version of the country's more contagious coronavirus variant, and one that spread 30%-70% faster than the previous dominant coronavirus strain. See also, Emma Hodcroft, University of Bern; Nextstrain;cov-lineages.org.

Furthermore, the Brazil variant ("P1") has also began to spread in the United States. According to researchers, the P1 variant is contagious and better able to reinfect people. Doctors fear it could also be more deadly. And just recently a new strain was identified in Northern California. Scientist in South Africa have said the variant there has mutation in addition to E484K that appear to help the virus escape antibodies. They had further concluded that both in South Africa and Brazil, variants with the E484K mutation emerged in regions where a large proportion of people already have Covid-19 antibodies from an earlier bout. This exact variant with the E484K mutation has been identified in the U.S. And it may be only a matter of time before it entered into the prison environment.

14

### PRAYER FOR RELIEF

Accordingly, Defendant Daniel Davis, hereby prays that the court grants him compassionate release and reduce his sentence to time served.

DATED, ATWATER, CALIFORNIA $3$/$8$/2021

Respectfully submitted,

By: _Daniel Davis_

Daniel Davis

Reg. No. #11609.039

U.S.P. Atwater

P.O. Box 019001

Atwater, CA 95301

15

Daniel R. Davis

Reg # 11609-039

United States Penitentiary

PO Box 019001

Atwater, CA 95301


*March. 8* 2021

Hon. Bernard A. Friedman

Federal Judge

Eastern District of Michigan

Southern Division

Detroit, MI 48226


Re:  My Petition for Compassionate Release (CR), enclosed--
this correspondence is to amplify and add support for my CR
request


Dear Sir, the Hon. Bernard A. Friedman:

My intent here is to provide personal reasons I should be
granted Compassionate Release. I have served 30 plus years on
my sentence. I am a model prisoner. The few blemishes are far
in the past. I have learned the right way is to work hard,
pursue education, and provide a positive example and model for
the younger prisoners to emulate; and a means of rejecting the
negative ways of my youth and to show others there's a better
way, I've taken advantage of numerous education and vocation
classes, which were successfully completed, in preparation of
gaining my freedom, and its inherit challenges, plus the
opportunity to prove my worthiness and be a productive

citizen.

I especially look forward to helping rear my grandchildren, guiding them down the positive path on the road to education, an ethical, productive and successful life, which includes a dynamic civic life.

I have strong family support. With that support and my own determination, I am committed to the pursuit of the American dream by becoming a productive member of the working class. I have the work ethic and positive attitude necessary to succeed. I also expect to be a model citizen and be a good example to the young men of my family and community. I will mentor, guide, and provide the hard lessons learned in my life before and during my long incarceration, with the objective of helping said youngsters take the right path, the path to a moral and ethical life, avoiding the prison cycle/track.

I can't imagine backsliding. In my mind it is impossible. I am authentically a changed man in attitude. I fully accept the norms of society. I dearly want to show the world how I've changed, how I've become a caring, hard working, and conscientious in all endeavors.

My work assignments have been numerous and varied, e.g., hospital orderly, safety chemical management orderly, and unit orderly. My rapport with staff and inmates is excellent. Across the board my work evaluations have been excellent during the entire period of my imprisonment.

When I entered prison for this sentence in 1988, my formal education level was high school graduate. I continued to expand my education taking advantage courses and classes offered at USP Beaumont: Industrial Sewing, Culinary Arts,

Paralegal, Health Awareness, Fitness II, Beginning and Advanced Typing, Sports Management, Referee, and more.

Thirty years ago I was sentenced to life for one count of conspiracy to carry money across state lines with a coconspirator. At that time I was liable for the overt act. Since then the law has changed and because of my criminal history I am denied the benefits of the changes. My role was "minor" according to the prosecutor. Ironically, I am the only defendant of this case still in prison.

At the start of this sentence I was 27-years old. In the interim I have matured into an enlightened man, fully cognizant of my mistakes, which I regret and wish I could do a do-over.

The inner city of Watts, of the greater Los Angeles, was my home. In my formative years Watts was a very negative place to live and grow. Positive guidance was absent. Not an excuse but nevertheless relevant to what I became. I now clearly see where I could have taken a different path, though it would have been a tough road.

I am now 60-years old. There is no resemblance to the young man from Watts when I entered prison. I have completely divorced myself from the negative influences and the advocates of same. I am vigilant and aware of my environment, on guard from the many opportunities to compromise my upright responsible life style. My demeanor is exemplary. In short I am authentically a model prisoner and moral human being. If given the opportunity I am certain I will succeed as a productive, law abiding citizen, a positive influence on those around me. Success is inevitable, assured.

Thank you for your time and consideration.

Very respectively,

Daniel R. Davis

FOREVER / USA

U.S. MARSHALS

RECEIVED

CERTIFIED MAIL

7019 1640 0002 1549 6472

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

Legal Mail

2821

UNITED STATES PENITENTIARY, ATWATER
P.O. BOX 019001
ATWATER, CA 95301  DATE  MAR 0 8 2021

The enclosed letter was processed through special mailing procedures for forwarding to you.
The letter has neither been opened nor inspected. If the writer raises a question or problem
over which this facility has jurisdiction, you may wish to return the material for further information
or clarification. If the writer encloses correspondence for forwarding to another addressee,
please return the enclosure to the above address.