## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

           Plaintiff,

           Case No. 88-cr-20063

   v.

           Hon. Bernard A. Friedman

DANIEL RAY DAVIS,

           Defendant.

_____/

## United States' Response Opposing the Defendant's
## Motion for Compassionate Release

Defendant Daniel Ray Davis[1], the self-described enforcer of a conspiracy to distribute over five kilograms of cocaine, who amassed at least five prior felony convictions by the age of 30, including three drug offenses and voluntary manslaughter arising from shooting his victim three times with a shotgun over a dice game altercation, and who attempted to defraud the government and the Court by intentionally hiding his extensive criminal history to obtain lenient treatment, now seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on the Covid-19 pandemic and non-retroactive changes in the law.  Davis's motion should be denied because he did not properly exhaust his administrative remedies;

---

[1] The presentence report (PSR) expressed uncertainty about whether Davis was the defendant's true name, noting that his real name may be Tony Harris and that he is associated with 16 aliases, three dates of birth, four places of birth, and three social security numbers.  (PSR at 2; 7, ¶ 30).

he declined a vaccination against COVID-19; he does not present a medical condition that, according to CDC guidance, places him at enhanced risk during the current pandemic; the First Step Act's non-retroactive changes to mandatory minimum sentences for certain drug offenses do not constitute "extraordinary and compelling" reasons for compassionate release; and the 18 U.S.C. § 3553(a) factors do not support release.

## I.    Background

### A.    Criminal Conduct

Because this Court presided over Davis's trial and because the presentence report contains great specificity about the facts underlying his conviction, they need not be extensively reiterated here. (PSR ¶¶ 15-30).  Davis was the "muscle" in a conspiracy to distribute more than five kilograms of cocaine. (PSR ¶ 29).  One of those distributions, resulting in the arrest and conviction of Davis and his co-conspirators, involved a shipment of 821.47 grams of 90% pure cocaine from California to Saginaw, Michigan in December 1988. (PSR ¶¶ 15-16). After the D.E.A. was notified of the shipment by UPS, it substituted a powdered flour/sugar mixture containing only .44 grams of cocaine for the original, delivered it, and then performed surveillance to determine that the package was moved to a new location. (PSR ¶¶ 18-22).  When agents raided the home, they found Davis and his coconspirators there and strong indications that a frantic attempt had been made to

destroy the evidence before agents could discover it. (PSR ¶¶ 23-25). Davis and two of his conspirators also displayed physical evidence of their direct contact with the drugs. (PSR ¶ 26).

After his arrest, using the name Daniel Ray Davis and failing to disclose his extensive criminal history of burglary, theft, drugs, and violence amassed under other names and other personal identifying information, Davis negotiated a "cooperation" deal and entered into a lenient Rule 11 Plea Agreement, culminating in a guilty plea before then Chief Judge James P. Churchill, which was later withdrawn when Davis's extensive criminal history was discovered. (PSR ¶¶ 5-10).  The case was then reassigned to this Court for trial. (*Id.*).

On October 18, 1989, Davis was convicted of engaging in a conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846. (PSR ¶¶ 11-12).  On direct appeal, the Sixth Circuit Court of Appeals affirmed Davis's conviction but vacated the sentence and remanded the matter to this Court to clarify the basis for its determination that the conspiracy involved five kilograms or more of cocaine and to provide Davis with an opportunity to rebut such evidence.  *United States v. Davis*, 928 F.2d 405 (Table), 1991 WL 37829 (6th Cir. Mar. 19, 1991) (unpublished).  On May 29, 1991, this Court conducted a re-sentencing hearing, determined that the conspiracy involved five kilograms or more of cocaine, and re-sentenced Davis to life imprisonment.

3

Davis's criminal history is considerable, given he was approximately 30 years old when sentenced here.  Under several names, Davis has adult felony convictions for burglary (1979), sale of PCP (1979), possession of cocaine (1980), voluntary manslaughter and felony firearm (1980), and possession of cocaine and weapons (1987).  (PSR ¶¶ 32-47).  As a minor, he was convicted of throwing a rock at a police car, twice convicted of burglary, and has six other charges, both as a juvenile and adult, with unknown dispositions. (PSR ¶¶ 50-61).

Davis is serving his sentence at the United States Penitentiary (USP) in Atwater, California. During his federal incarceration, Davis has thus far accumulated ten disciplinary sanctions, including refusing to obey an officer (1991), possession of drugs or drug items (two times – 1993, 2000), possession of a dangerous weapon (2000), and assault with serious injury (1998).  (Govt. Ex. 1 – Inmate Disciplinary Data).  His latest disciplinary action was in 2014. (*Id.*).

**B.**   **Request for Compassionate Release**

Davis submitted three requests to the warden at USP Atwater, on May 12, 2020, June 22, 2020 and August 25, 2020, asking the warden to file a motion for a reduction in sentence on his behalf in light of the First Step Act's elimination of the mandatory life sentence enhancement for two prior felony drug convictions under 21 U.S.C. § 841(b)(1)(A).  The warden denied these requests.  (*See* Govt. Ex. 2 – BOP RIS Records.)

On March 8, 2021, Davis submitted a motion to this Court for compassionate release.  (ECF No. 230.)  In this motion, Davis asks the court to grant him compassionate release and reduce his sentence to time served, asserting as "extraordinary and compelling" reasons the First Step Act's changes to the sentencing regimes of 21 U.S.C. §§ 841(b)(1)(A) and 851.  Specifically, Davis points to the elimination of the mandatory minimum life sentence for two or more prior felony drug convictions, and he also claims that his prior drug convictions no longer qualify for the enhancement under the statute.  Davis contends that he has already served a term of imprisonment longer than if he had been sentenced under the current law.  Davis also asserts that the COVID-19 pandemic is especially dangerous within the confines of correctional institutions and that his post-conviction rehabilitation favors a sentence reduction under the § 3553(a) factors.

The undersigned obtained Davis's medical records for the past few years from the Bureau of Prisons (BOP), which are filed under seal as Govt. Exhibit 3. The records reveal that Davis, who is 60 years old, presents with no significant medical issues and was recently offered but refused the COVID-19 vaccine.

### C.   The BOP's Response to the COVID-19 Pandemic

As the Court is aware, from the moment the COVID-19 pandemic began, the BOP made extensive changes to its operations and developed an action plan in consultation with the Centers for Disease Control and the World Health

Organization.  The BOP's efforts, which include quarantining all new inmates, restricting inmate movement to promote social distancing, mask wearing by inmates and staff, daily screening of all facility staff, limiting visitor access to the institutions, immediately quarantining infected inmates, and testing and quarantining those who have contact with infected inmates, have been fruitful, despite the known risks of viral spread in a congregate prison setting.  Notably, the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population.[2]

Additionally, the BOP is now in the process of offering vaccines to inmates, proceeding based on priority of need in accordance with CDC guidelines.  As of this time, the BOP has administered a total of 191,324 doses to staff and inmates nationwide.  In mid-April 2021, the BOP estimated that if it continued to receive doses at the then-current pace it will have offered a vaccine to every inmate in its custody by June 1, 2021.  As a court recently observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine

---

[2] In the BOP, 238 of its 143,055 inmates in institutions and community-based facilities have died as a result of COVID-19 disease.  This amounts to an approximate BOP death rate among inmates of 166 per 100,000 persons, whereas the current figure for the United States as a whole is 180 per 100,000.  *See* https://www.bop.gov/coronavirus/ (last visited June 11, 2021); https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (last visited June 11, 2021).

utilization rate." *United States v. Roper*, No. 16-335, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (footnote omitted).

Specifically, as it relates to Davis, the BOP's aggressive efforts have extended to USP Atwater. That institution houses 932 inmates. At present, there are *zero* inmates housed at USP Atwater who are reported positive for COVID-19. And of the 360 inmates at the facility who previously tested positive over the past several months, *all* of them have recovered. There has not been a COVID-related death at this institution. Also, the BOP has fully vaccinated 152 staff members, and 473 inmates at USP Atwater (which is 50.7% of the current inmate population and does not account for the inmates who declined vaccination). The latest statistics are available at www.bop.gov/coronavirus.

## II.    Discussion

### A.    Governing Law

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

(c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1)  in any case—

(A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,

may reduce the term of imprisonment (and may impose a term of probation
or supervised release with or without conditions that does not exceed the
unserved portion of the original term of imprisonment), after considering the
factors set forth in section 3553(a) to the extent that they are applicable, if it
finds that—

(i)  extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements
issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general

policy statements regarding the sentencing modification provisions in section

3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary

and compelling reasons for sentence reduction, including the criteria to be applied

and a list of specific examples. Rehabilitation of the defendant alone shall not be

considered an extraordinary and compelling reason."

The Sentencing Guidelines policy statement appears at § 1B1.13, and

provides that the Court may grant release if "extraordinary and compelling

circumstances" exist, "after considering the factors set forth in 18 U.S.C.

§ 3553(a), to the extent that they are applicable," and the Court determines that

"the defendant is not a danger to the safety of any other person or to the

community, as provided in 18 U.S.C. § 3142(g)." Although the Sixth Circuit has

concluded that this policy statement is not currently binding in connection with

motions filed by defendants, *see United States v. Elias*, 984 F.3d 516, 519 (6th Cir.

2021), the courts of appeals have recognized that it continues to provide important

"guideposts." *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021); *see United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.").

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.).  As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (citations omitted). That statutory requirement means that a defendant's reasons for release must satisfy two strict criteria. 18 U.S.C. § 3582(c)(1)(A)(i). The defendant's reasons must be "extraordinary"—meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). The reasons must also be "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*,

2020 WL 515935, at *3. A defendant must establish both criteria to satisfy the statute's eligibility threshold.  Davis has satisfied neither.

### B.    COVID-19 and Compassionate Release

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. The Third Circuit therefore held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) (not precedential) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) (Van Bokkelen, J.) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own.").

The government acknowledges, however, that an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease. *See United States v. Tartaglione*, 2020 WL 3969778, at *5-6 (E.D. Pa. July 14, 2020) (Slomsky, J.) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020) (Ranjan, J.)).

The CDC's list of risk factors was most recently updated on March 29, 2021. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. It reports a list of conditions that "can make you more likely to get severely ill from COVID-19." An inmate who has not been offered a vaccine, who presents a condition on that list, presents an "extraordinary and compelling reason" allowing consideration of compassionate release.

**C.     Binding authority prohibits the Court from granting Davis compassionate release based on COVID-19, because he has not satisfied the statutory exhaustion requirement.**

As noted above, Davis cites the dangers of the COVID-19 pandemic within the confines of correctional institutions as a basis for compassionate release in his motion.  (ECF No. 230, PageID.224.)  In his brief, however, Davis asserts that he "is not moving the court for compassionate release due to any medical reason, age, or family circumstance;" rather, he directs the Court to the First Step Act as the sole "extraordinary and compelling" reason for release.  (*Id.*, PageID.227-228.) Later in his brief, Davis changes tack again and asserts COVID-19-related reasons for his release, including (1) an outbreak at USP Atwater; (2) his age (60 years old); (3) the CDC's warning that adults of any age with certain underlying medical conditions are at an increased risk for severe illness from COVID-19, although he does not present an underlying medical condition of his own; (4) an inability to social distance in prison; and (5) the emerging COVID-19 variants.  (*Id.*, PageID.236-238.)

To the extent that Davis seeks compassionate release based on his age and generalized concerns about the COVID-19 pandemic, his motion should be denied, because he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). As the Sixth Circuit held in *Alam*, this statutory exhaustion requirement is "a mandatory condition" that "must be enforced" when the government raises it. *Id.* at 832–36; *accord United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

Section 3582(c)(1)(A) also means that an inmate may not move for compassionate release on a different ground than the one he raised during the administrative process. The whole point of § 3582(c)(1)(A)'s exhaustion requirement is to ensure that the BOP has the opportunity to evaluate and consider an inmate's request first, while allowing the inmate to seek relief in court if the BOP denies or fails to act upon the request. *Alam*, 960 F.3d at 835–36. So when "the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before [he] brings his request to the courts." *United States v. Asmar*, 465 F.Supp.3d 716, 719 (E.D. Mich. 2020); *accord United States v. Mogavero*, No. 15-00074, 2020 WL 1853754, at *2 (D.

13

Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden."); *United States v. Jenkins*, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020).

Furthermore, although district courts have split on this issue, the Seventh Circuit recently held that§ 3582(c)(1)(A) requires issue-specific exhaustion. In *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021), the court opined that § 3582(c)(1)(A)'s exhaustion requirement more closely resembles the exhaustion requirement in the Prison Litigation Reform Act (PLRA). The PLRA requires "proper exhaustion" of available administrative remedies in order to afford prisons an opportunity to address issues before they are brought to federal court. *Id*.; *see* 42 U.S.C. § 1997e(a). Because an inmate cannot satisfactorily exhaust under the PLRA by filing a grievance on one ground and then suing in court on an unrelated ground, the court held that an inmate must raise the same issues in the BOP and federal court in order to exhaust under § 3582(c)(1)(A). *Williams*, 987 F.3d at 704.

The best reading of Sixth Circuit law is also that § 3582(c)(1)(A) requires issue-specific exhaustion. As the Sixth Circuit has explained, an exhaustion statute "written in more general terms" commands "issue exhaustion if an agency's rules so require." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019) (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)); *accord Cuevas-Nuno v. Barr*, 969 F.3d 331, 334–35 & n.4 (6th Cir. 2020). Section 3582(c)(1)(A) is just

14

such a statute, and the agency's rules here require an inmate to identify "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration" for compassionate release. 28 C.F.R. § 571.61(a)(1).

Thus, an inmate seeking relief based on a combination of COVID-19 and a particular medical condition or conditions must first make *that* specific request to the BOP before seeking relief in court. *Island Creek Coal Co.*, 937 F.3d at 746–47; *see Alam*, 960 F.3d at 834–36 (emphasizing the issue-specific nature of exhaustion under § 3582(c)(1)(A)).]

Davis did not comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement in this regard.  Here, Davis sought a reduction in sentence from the BOP solely on the basis of the First Step Act's elimination of the mandatory life sentence enhancement under 21 U.S.C. § 841(b)(1)(A) for defendants with two prior felony drug convictions.  (*See* Ex. 1.)  Davis's motion for compassionate release based on his age and generalized concerns about the Covid-19 pandemic should therefore be denied for failure to exhaust. *Alam*, 960 F.3d at 836.

Even if the Court is inclined to overlook Davis's failure to exhaust on the COVID-19 aspect of his motion, Davis's motion should still be denied, because he has not presented extraordinary and compelling reasons for release.

First, Davis he has not identified any medical condition that he currently has that is on the CDC's list of risk factors, or indeed any chronic medical ailment.

*See, e.g.*, *United States v. Williams*, 2020 WL 4001045, at *2 (E.D. Pa. July 14, 2020) (denied for inmate who presents no health conditions); *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (Drain, J.) (denied for 28-year-old inmate at institution with outbreak); *United States v. Haney*, 454 F. Supp. 3d 316 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions).

And age alone is not an extraordinary reason in the context of the COVID-19 pandemic. *See United States v. Cooper*, 2020 WL 4882535, at *3 (N.D. Ind. Aug. 20, 2020) ("his age alone without any underlying medical condition making him more likely to experience serious complications from the disease, does not support a finding that extraordinary and compelling reasons require a reduction in her sentence."); *United States v. Castillo*, 2021 WL 268638, at *4 (S.D.N.Y. Jan. 27, 2021) ("Age alone, however, is not a sufficient basis for a finding of extraordinary and compelling circumstances" in the context of COVID-19; defendant is 63 years old).

Moreover, Davis was recently offered the Moderna vaccine – a vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was approximately 95% effective in preventing COVID-19 infection – *and he refused it*. *See* FDA Decision Memorandum, Moderna - Dec. 18, 2020, https://www.fda.gov/media/144673/download; Govt. Ex. 3, p.1. Davis has no known medical contraindication for the vaccine, yet he elected to decline

the vaccine, forgoing the opportunity for "self-care" that the BOP made available. This similarly precludes eligibility for compassionate release.,

Indeed, "[c]ourts in this circuit have consistently refused to find extraordinary and compelling medical circumstances when a defendant declines the COVID-19 vaccine." *United States v. Toney*, No. 17-20184, 2021 WL 1175410, at *1 (E.D. Mich. Mar. 29, 2021) (Levy, J.) (citing *United States v. Goston*, No. 15-20694 (E.D. Mich. Mar. 9, 2021) (Levy, J.); *United States v. Macgregor*, No. 15-20093 (E.D. Mich. Mar. 12, 2021) (Leitman, J.); *United States v. Ervin*, No. 14-000195 (M.D. Tenn. Mar. 5, 2021). And this consensus resonates around the country. *See, e.g.*, *United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (citing more than a dozen cases); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release."); *United States v. Jackson*, 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021) ("Jackson's decision to refuse the vaccine flies in the face of any medical recommendation regarding the vaccines. While he is within his rights to refuse any treatment he wishes to forego,

he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."); *United States v. Williams*, 2021 WL 321904 (D. Ariz. Feb. 1, 2021) (defendant's explanation for refusal was "incredible in light of his claim that his risk of a serious illness from the COVID-19 virus is an extraordinary and compelling reason for his immediate release"); *United States v. Gonzalez Zambrano*, 2021 WL 248592 (N.D. Iowa Jan. 25, 2021) (denied based on 3553(a) factors, but states: "It would be paradoxical to endorse a system whereby a defendant could [proffer] extraordinary and compelling circumstances for compassionate release" by refusing "health care [offered] to them"); *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction.").

Defendants have contested this consensus, pointing out that the vaccines may not be 100% effective, that they were not tested in a congregate setting, that they may not be effective for all individuals, that variants may emerge that bypass the vaccines, and that the vaccines may cause side effects. The courts have almost uniformly rejected these arguments. The prevailing view is that "absent some shift in the scientific consensus, vaccination against COVID-19 would preclude the

18

argument that a defendant's susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.); *see also, e.g.*, *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (Levy, J.) (denied after first dose, and rejects speculation regarding future effectiveness against variants: "Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19. However, at this time, the Court does not find extraordinary and compelling circumstances based on that speculation."); *United States v. Kariblghossian*, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) ("Nonetheless, at this time, the available scientific evidence suggests that the Pfizer vaccine is highly effective against known variants of the SARS-COV-2 virus that causes COVID-19) (citing CDC studies and Yang Liu, et. al., Neutralizing Activity of BNT162b2-Elicited Serum, The New England Journal of Medicine (March 8, 2021),

https://www.nejm.org/doi/full/10.1056/NEJMc2102017?query=featured_home)).

At this time, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus. The result therefore will not be different if the defendant changes his mind and takes the vaccine, as that action

would also preclude compassionate release grounded on COVID-19. *See Smith, supra.* Absent a dramatic change in the current scientific assessment regarding the efficacy of the vaccines, the advent of widespread vaccine availability should bring to an end this unprecedented period in which compassionate release has been available based on the threat of the virus.

Because Davis failed to exhaust his administrative remedies, failed to present an underlying medical condition that is on the list of CDC risk factors, and refused the vaccine, his motion for compassionate release based on his age and the COVID-19 pandemic should be denied.

### D. The First Step Act's non-retroactive changes to mandatory minimum sentences do not constitute "extraordinary and compelling" reasons for compassionate release.

Davis's mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) does not present an "extraordinary and compelling reason" for a sentence reduction, notwithstanding a subsequent change in the law. Section 3582 does not define these terms, but courts have defined "extraordinary" as "exceptional to a very marked extent" and "compelling" as "tending to convince or convert by or as if by forcefulness of evidence." *United States v. Shah*, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (quoting Webster's Third International Dictionary, Unabridged (2020)); *United States v. Sapp*, 2020 WL 515935 at *3 (E.D. Mich. Jan. 31, 2020) (citations omitted). "Compelling" has also been defined as "so great

20

that irreparable harm or injustice would result if the relief is not granted." *Id*. A defendant, like Davis, who is in the same position as many other prisoners – *i.e.*, serving a sentence imposed under a law that Congress subsequently changed but expressly chose not to make retroactive to defendants like him – has not demonstrated either extraordinary or compelling reasons for release.

The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism." *United States v. Simmons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. Apr. 22, 2019). Among other things, the First Step Act amended 21 U.S.C. § 841(b)(1)(A) to reduce the applicable mandatory minimum sentences. Previously, a violation of § 841(b)(1)(A) carried a mandatory minimum sentence of life in prison if the defendant had two or more prior convictions for a "felony drug offense." *See* 21 U.S.C. § 841(b)(1)(A) (pre-Dec. 21, 2018 versions). Section 401 of the First Step Act amended § 841(b)(1)(A) to impose a shorter mandatory minimum sentence of 25 years, where the defendant has two or more prior convictions for a "serious drug felony" or "serious violent felony." *See* 21 U.S.C. § 841(b)(1)(A) (eff. Dec. 21, 2018); First Step Act of 2018, § 401, 132 Stat. at 5220. Thus, in Davis's case, while he faced a mandatory minimum sentence of life imprisonment when he was

sentenced in 1990, if he were sentenced today under the First Step Act's amendment, he would face a mandatory minimum of 25 years.

But Congress elected to make its changes to § 841 "largely forward-looking and not retroactive, applying only where 'a sentence for the offense has not been imposed as of [the] date of enactment.'" *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 1237, 206 L. Ed. 2d 227 (2020) (quoting First Step Act § 401(c)). The First Step Act was enacted on December 21, 2018. 132 Stat. at 5194. Davis was sentenced years earlier, on January 24, 1990, and therefore the First Step Act does not apply to him.

Despite Congress's clear and express choice to limit the retroactivity of the First Step Act's amendment to § 841, Davis now seeks to use § 3582(c) to end-run that legislative limit. This Court should reject that effort.

Much of the compassionate release litigation related to the sentencing changes in the First Step Act stems from § 403's amendment to 18 U.S.C. § 924(c), which eliminates the 25-year mandatory-minimum stacked sentences for defendants who had not been convicted previously of violating § 924(c). Sections 401 and 403 of the First Step Act contain identically worded applicability provisions, and the Sixth Circuit has analyzed the application of sections 401 and 403 through the same lens. *United States v. Owens*, 996 F.3d 755, 760 n.3 (6th Cir. 2021) (citing *United States v. Richardson*, 948 F.3d 733, 750 (6th Cir.), *cert.*

*denied,* 141 S. Ct. 344, 208 L.Ed.2d 79 (2020)).  Thus, a review of the recent case law regarding § 403 and its amendment to § 924(c) is relevant here.

To be sure, some courts, including courts in this district, have found that, in light of the First Step Act, lengthy stacked § 924(c) sentences can constitute an extraordinary and compelling reason for a sentence reduction – at least when combined with other circumstances.  *See, e.g.*, *United States v. McCoy*, 981 F.3d 271 (4th Cir. Dec. 2, 2020) (compassionate release is permitted based on the length of stacked 924(c) sentences); *United States v. McGee*, 992 F.3d 1035, 1045–48 (10th Cir. 2021), *and United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) (compassionate release may not be premised solely on disagreement with the length of a sentence, or employed simply to apply an otherwise non-retroactive change in sentencing law; however, the non-retroactive changes in Sections 401 (*McGee*) and 403 (*Maumau*) of the First Step Act may be considered in combination with other "unique circumstances"); *United States v. Baker*, 2020 WL 4696594 (E.D. Mich. Aug. 13, 2020) (Steeh, J.) (finding that relief based on stacked 924(c) sentences combined with rehabilitation is permitted); *United States v. McDonel*, 2021 WL 120935 (E.D. Mich. Jan. 13, 2021) (Lawson, J.) (granting relief from a 107-year sentence for stacked 924(c) offenses, given the defendant's youth at the time of the crimes and rehabilitation; the defendant had served 13

years and the court reduced the term to 20 years (though the mandatory today

would be 35 years)).

But many other courts, including *this* Court, have reached the opposite

conclusion that stacked § 924(c) sentences do *not* meet the high bar for relief set

forth in § 3582(c).  *See, e.g.*, *United States v. Robinson*, No. 99-cr-80809-04, 2020

WL 3603688, at *3 (E.D. Mich. July 2, 2020) (Friedman, J.) (denying motion for

sentence reduction based on 924(c) stacking argument, and noting "[t]he Court

also rejects defendant's argument that this change in the law is an 'extraordinary

and compelling reason[ ]' entitling him to compassionate release under 18 U.S.C.

§ 3582(c)(1)(A)(i)" because "Congress has specifically indicated that this 'anti-

stacking' provision of the Act may not be applied retroactively"); *United States v.

Montgomery*, No. 12-cr-20832-01, ECF No. 116 (July 29, 2020) (Friedman, J.)

(same); *United States v. Mitchell*, 2021 WL 289556 (E.D. Mich. Jan. 28, 2021)

(Ludington, J.) (compassionate release not available to address stacked 924(c)

sentences); *United States v. Andrews*, No. 05-280-02, 2020 WL 481226, at *6-7

(E.D. Pa. Sept. 4, 2020) (the court cannot consider the amendment to 924(c) as an

extraordinary and compelling reason for granting compassionate release).

Importantly, in a recent published decision, the Sixth Circuit affirmed a

district court's denial of compassionate release and expressly rejected the

defendant's argument about the First Step Act's change to § 841's mandatory

24

minimum penalties, which is very similar to Davis's argument here.  In *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021), the issue presented was whether the First Step Act's change in certain mandatory minimum penalties for drug offenses under 21 U.S.C. § 841 could constitute an extraordinary and compelling reason for compassionate release.  The court explicitly noted that this section of the First Step Act – § 401 – applies "only where 'a sentence for the offense has not been imposed as of [the] date of [the Act's] enactment.'" *Tomes*, 990 F.3d at 505 (quoting *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019) (quoting First Step Act of 2018, § 401(c), 132 Stat. 5221).  And since Tomes – just like Davis here – was sentenced before the First Step Act was enacted, the Sixth Circuit rejected Tomes's argument that the amendment could constitute an extraordinary reason for a sentence reduction, stating "[w]e will not render § 401(c) *useless* by using § 3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms."  *Tomes*, 990 F.3d at 505 (emphasis added).

In *United States v. Owens,* 996 F.3d 755 (6th Cir. 2021), however, a different panel of the Sixth Circuit held that, "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence he would receive

if the First Step Act applied." *Id*. at 760.  The government disagrees with that

holding and preserves for further review its argument that the panel's decision in

*Owens* is inconsistent with the Sixth Circuit's prior decisions in *Tomes, supra,* and

*United States v. Wills*, 991 F.3d 720 (6th Cir. 2021).[3]

      The panel's decision in *Owens* is also inconsistent with another Sixth Circuit

panel's more recent decision in *United States v. Jarvis*, No. 20-3912, --- F.3d ----,

2021 WL 2253235 (6th Cir. June 3, 2021).  In *Jarvis*, the defendant moved for

compassionate release citing the COVID-19 pandemic and the First Step Act's

amendments to 924(c).  The district court denied his motion explaining that the

First Step Act's non-retroactive change to § 924(c) could not as a matter of law be

an "extraordinary and compelling" reason under § 3582(c)(1)(A)(i).  The Sixth

Circuit affirmed, found that *Tomes* was binding, controlling authority, and relied

upon *Tomes* in holding that a non-retroactive statutory change in § 403 of the First

Step Act, similar to that of § 401, could not serve as an "extraordinary and

compelling reason" under § 3582(c)(1)(A)(i).  The court stated, "[a]s in *Tomes*, we

'will not render' § 403(b) 'useless by using § 3582(c)(1)(A)' to thwart Congress's

retroactivity choices." *Id*. at *2.  The Court explained that "[a] faithful reading of

*Tomes* . . . leads to just one conclusion: that it excluded non-retroactive First Step

---

[3] Shortly after the *Owens* decision issued, the government requested and received an extension of time within which to file a petition for rehearing *en banc*, until June 21, 2021.  *United States v. Owens*, No. 20-2139, ECF Nos. 30, 31 (6th Cir. 2021).

Act amendments from the category of extraordinary or compelling reasons,
whether a defendant relies on the amendments alone or combines them with other
factors." *Id*. at *4.  *See also United States v. Corona*, No. 20-6309, 2021 WL
2345769, at *2 (6th Cir. June 8, 2021) (defendant's argument for compassionate
release based on COVID-19 outbreak at his prison facility, his age (51),
rehabilitative efforts, family support, and § 401's reduction of mandatory
minimums for certain drug offenses "is foreclosed by our recent decisions
in *Tomes* and *United States v. Jarvis*.")

As in *Tomes*, *Jarvis*, and this Court's previous decision in *United States v.
Robinson*, *supra*, this Court should reject Davis's similar attempt to subvert
Congress's legislative choice and render the retroactivity provision of Section
401(c) "useless," and deny Davis's motion for compassionate release on this basis.

### E.    The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even if Davis had shown "extraordinary and compelling reasons," he would
still not be entitled to compassionate release.  Before ordering relief, the Court
must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that
release is appropriate. 18 U.S.C. § 3582(c)(1)(A).  A defendant's failure to
establish that the § 3553(a) factors support relief is an independent basis for
denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09
(6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir.

2020) (upholding a district court's denial of compassionate release based on the

§ 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir.

2020) (same).

Preliminarily, it is worth noting that Davis was sentenced to spend the rest of

his life in prison but seeks release at the relatively young age of 60. His long

remaining sentence thus weighs heavily against release. The Sixth Circuit has

repeatedly upheld the denial of compassionate release under § 3553(a) when a

defendant has a long remaining sentence. *Ruffin*, 978 F.3d at 1008; *accord*

*Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United*

*States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020). The plain language

of the compassionate-release statute is clear: it requires that the defendant's

reasons for release "warrant such a reduction" in his sentence. 18 U.S.C.

§ 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time

remaining on the defendant's sentence, requiring him to justify the magnitude of

his requested sentence reduction. So a defendant with many years left on his

sentence, like Davis, must show that his reasons for release are so powerful that

they "warrant" a "reduction" of that size. He has simply failed to do so, as a review

of the 3553(a) factors demonstrate.

First, the nature and circumstances of the offense and the history and

characteristics of the defendant militate against release. Davis served as the self-

proclaimed "muscle," or protector of the distribution conspiracy.  He was not

simply selling drugs; he was prepared to use violence to protect those who were.

And his history and characteristics were made for that role: not only three prior

drug offenses, but the latest, two years before this offense, involving both drug and

weapons possession, and a murder charge resulting in a voluntary manslaughter

conviction arising from Davis shooting the victim three times with a shotgun.

To be sure, the Court may consider Davis's post-conviction "rehabilitation"

in its analysis of his history and characteristics.  But a closer examination of his

institutional record is less than compelling.  As noted more fully below, he has

more than a "few blemishes" on that record, including ten misconducts including

drug and weapons possession and assault.  Although it is positive that there are no

violations on Davis's record since 2014, following the rules is hardly a reason

justifying such a significant reduction in sentence. And although Davis claims to

be "rehabilitated," in large part through availing himself of education at the

institution, a closer inspection of his educational data transcript reveals that Davis

took no classes whatsoever for the four years preceding December 2020, or for the

four years from May 2012 to June 2016. (Govt. Ex. 4 – Inmate Education Data

Transcript).  Indeed, since April 2005, the transcript shows only 265 hours of study

completed, for an average of about 16.5 hours/year.  Moreover, Davis provides no

proof that he has "conducted himself in a well respectable manner among inmates

and staff alike," nor proof that he has "a strong supportive family that will provide residence, and financial support, including employment" as he claims. (ECF No. 230, PageID.235-236). Rather, he asks the Court to accept his word – the word of the man who lied to the government and to the Court about his identity and personal identifying information in order to hide his prior criminal record and obtain a more lenient plea agreement in this case. Based on these factors alone, Davis deserves the life sentence he received.

Second, the need for the sentence imposed to reflect the seriousness of the offense and promote respect for the law and provide just punishment also weighs against Davis. Here, there can be little doubt that society views a conspiracy to distribute more than five kilograms of cocaine extremely seriously. This is especially true where, as here, the defendant has a history of drug and violence-related convictions. The statutory scheme is all the proof necessary that such conduct is among the most serious addressed by federal law. The congressional decision not to apply recent changes to the mandatory minimum sentences retroactively underscore its respect for the judgment of society at the time Davis committed this offense, and its continuing judgment that these offenses are extremely serious. Indeed, the First Step Act kept the maximum penalty for conspiracy to distribute more than five kilograms of cocaine alone at life in prison. Again, based on these factors, Davis does not deserve release.

Third, the need to afford adequate deterrence and to protect the public from further crimes of the defendant are both factors that argue against release. Davis's criminal and institutional history both suggest that he cannot be trusted to follow the law if released. His entire adult life was riddled with serious and dangerous offenses, including homicide. His juvenile life was marked by burglary convictions. He had an outstanding parole violation warrant at the time of his sentence in this case, and his criminal history shows that he violated probationary sentences as well. (PSR ¶¶ 62, 32-47). In the first 25 years of his incarceration, the defendant was found to have committed ten institutional offenses, including drug possession, weapons possession, and assault with serious injury. This is the record that Davis calls "a few blemishes" while arguing he is currently "a model prisoner." (ECF No.230, PageID.240). Davis continues to present a danger to the community and should be required to serve the sentence that this Court imposed for his criminal conduct.

Because Davis has failed to establish that the § 3553(a) factors support relief, compassionate release may be denied on this basis alone.

## <u>Conclusion</u>

In sum, upon consideration of all pertinent factors, the motion for compassionate release should be denied. If, however, the Court concludes that immediate release is warranted, the government respectfully requests that the Court

order a 14-day quarantine and medical clearance prior to release to minimize the

possibility of any spread of COVID-19 from the inmate to the public.

 

Respectfully Submitted,

SAIMA S. MOHSIN
Acting United States Attorney

*s/Corinne M. Lambert*
Corinne M. Lambert
Special Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Corinne.Lambert@usdoj.gov
(313) 226-9129.

*s/Craig A. Weier*
Craig A. Weier (P33261)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
craig.weier@usdoj.gov
(313) 226-9678

Date: June 14, 2021

## **Certificate of Service**

I hereby certify that on June 14, 2021, I filed the foregoing electronically via the CM/ECF system and mailed a copy via the United States Postal Service to:

Daniel Ray Davis
11609039
United States Penitentiary
P.O. Box 019001
Atwater, CA 95301

*s/Corinne M. Lambert*
Corinne M. Lambert